Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANE THOMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>MARRONE BIO INNOVATIONS, INC., KEVIN HELASH, ROBERT A. WOODS, PAMELA G. MARRONE, YOGESH MAGO, ZACHARY S. WOCHOK, KEITH MCGOVERN, STUART WOOLF, and LARA L. LEE,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shane Thompson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Marrone Bio Innovations, Inc. ("Marrone Bio" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

Case 1:22-cv-02998-ARR-MMH Document 1 Filed 05/20/22 Page 2 of 14 PageID #: 2

C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Marrone Bio and Bioceres Crop Solutions Corp. ("Bioceres").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Marrone Bio common stock.

7. Defendant Marrone Bio discovers, develops, and sells biological products for crop protection, crop health, and crop nutrition. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "MBII."

2

8. Defendant Kevin Helash ("Helash") is Chief Executive Officer and a director of the Company.

9. Defendant Robert A. Woods ("Woods") is Chair of the Board of the Company.

10. Defendant Pamela G. Marrone ("Marrone") is the founder and a director of the Company.

11. Defendant Yogesh Mago ("Mago") is a director of the Company.

12. Defendant Zachary S. Wochok ("Wochok") is a director of the Company.

13. Defendant Keith McGovern ("McGovern") is a director of the Company.

14. Defendant Stuart Woolf ("Woolf") is a director of the Company.

15. Defendant Lara L. Lee ("Lee") is a director of the Company.

16. Defendants Helash, Woods, Marrone, Mago, Wochok, McGovern, Woolf, and Lee are collectively referred to herein as the "Individual Defendants."

17. Defendants Marrone and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On March 16, 2022, Marrone and Bioceres announced that they had entered into a definitive agreement to combine in an all-stock transaction. Under the terms of the Proposed Transaction, each share of Marrone common stock will be exchanged at closing for ordinary shares of Bioceres at a fixed ratio of 0.08. The press release announcing the Proposed Transaction states, in pertinent part:

**Bioceres Crop Solutions and Marrone Bio Announce Merger Agreement**

*Combined company creates global leader in sustainable agricultural solutions*

*Bioceres obtains commitment for up to $45 million loan facility and conversion of existing convertible notes into shares and new term loan facility*

March 16, 2022 05:58 PM Eastern Daylight Time

ROSARIO, Argentina & RALEIGH, N.C.--(BUSINESS WIRE)--Bioceres Crop Solutions Corp. (NASDAQ: BIOX) (Bioceres) and Marrone Bio Innovations, Inc. (NASDAQ: MBII) (MBI) announced today that they have entered into a definitive agreement to combine the companies in an all-stock transaction. Under the terms of the transaction, which has been unanimously approved by the Board of Directors of both companies, each share of MBI common stock will be exchanged at closing for ordinary shares of Bioceres at a fixed ratio of 0.088, representing a value of approximately $236 million, based on the Bioceres and MBI share prices at market close on March 15, 2022 and the number of current outstanding MBI shares.

\*   \*   \*

**Transaction Details**
The transaction is expected to close in the third quarter of calendar 2022, subject to the approval of MBI shareholders, regulatory clearance and other customary closing conditions. Shareholders representing approximately 49% of MBI's outstanding shares of common stock have entered into customary transaction support agreements, agreeing to vote their shares in favor of the merger agreement and transactions contemplated thereby. Upon close, MBI shareholders will own approximately 16 million shares of Bioceres, with at least two individuals designated by MBI to be appointed to Bioceres' board of directors.

Linklaters LLP is serving as legal counsel to Bioceres. Roth Capital Partners is serving as financial advisor to MBI, and Morrison & Foerster LLP is serving as legal counsel to MBI.

**Bioceres Financing And Capitalization Update**
In connection with the transaction, Bioceres has agreed to terms for a capital commitment with a principal amount between $37.5 million and $45 million in the form of a convertible loan. The loan will mature four years after closing and accrue interest at an annual rate of 9%, of which 5% will be payable in cash and 4% in-kind. At any time up to maturity the lenders will have the option to convert the loan into common shares of Bioceres at a strike price of $18 per share. Bioceres will have the option for a voluntary prepayment beginning 30 months after the date on which the loan has been effected.

Bioceres has also entered into an agreement with holders of a convertible note with an outstanding principal amount of $49.1 million that matures in March 2023. Under such agreement, and pursuant to the terms of the convertible note, the holders of the convertible note have committed to convert 75% of the outstanding principal amount into shares of common stock of Bioceres. The remaining 25% of the

principal amount outstanding will be rolled into a new loan facility with a maturity of 4 years and no rights to convert into equity.

Under the proposed terms, the closing of the conversion of the existing convertible notes and closing of the related new term loan are expected to occur within six weeks, and the closing of the new convertible loan is conditioned on, and will occur simultaneously with the closing of the transaction.

The terms of the conversion, new term loan and new convertible loan described above are subject to negotiation and execution of customary definitive documentation.

* * *

**About Bioceres Crop Solutions Corp.**
Bioceres Crop Solutions Corp. (NASDAQ: BIOX) is a fully integrated provider of crop productivity technologies designed to enable the transition of agriculture towards carbon neutrality. To do this, Bioceres' solutions create economic incentives for farmers and other stakeholders to adopt environmentally friendlier production practices. The Company has a unique biotech platform with high-impact, patented technologies for seeds and microbial ag-inputs, as well as next generation crop nutrition and protection solutions. Through its HB4® program, the Company is bringing digital solutions to support growers' decisions and provide end-to-end traceability for production outputs. For more information, visit **here**.

**About Marrone Bio Innovations**
Marrone Bio Innovations Inc. (NASDAQ: MBII) is a growth-oriented agricultural company leading the movement to environmentally sustainable farming practices through the discovery, development and sale of innovative biological products for crop protection, crop health and crop nutrition. The portfolio of 18 products helps customers operate more sustainably while increasing their return on investment. The company's commercial products are sold globally and supported by a robust portfolio of more than 500 issued and pending patents. End markets include row crops; fruits and vegetables; trees, nuts and vines; and greenhouse production. Marrone Bio's research and development program uses proprietary technologies to isolate and screen naturally occurring microorganisms and plant extracts to create new, environmentally sound solutions in agriculture. For more information, visit **here**.

19.     On May 9, 2022, Defendants caused to be filed with the SEC a Form F-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

20. The Registration Statement, which recommends that Marrone shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Marrone's, Bioceres's, and the combined company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Houlihan Lokey and Roth Capital Partners ("Roth"), the Company's additional financial advisor; and (iv) potential conflicts of interest involving Company insiders.

21. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of MBI's Board and Reasons for the Merger; (ii) Prospective Financial Information Prepared by MBI's Management; and (iii) Opinion of Houlihan Lokey to MBI's Board.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Marrone shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Marrone's, Bioceres's, and the Combined Company's Financial Projections

23. The Registration Statement omits material information concerning Marrone's, Bioceres's, and the combined company's financial projections.

24. With respect to Marrone's, Bioceres's, and the combined company's financial projections, the Registration Statement fails to disclose: (1) all line items underlying the projections; (2) Marrone's, Bioceres's, and the combined company's respective net income

6

projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Marrone and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 20, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Houlihan Lokey's Analyses

28. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Houlihan Lokey.

29. With respect to Houlihan Lokey's "*Selected Companies Analysis*" and "*Selected Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction Houlihan Lokey observed in its analyses.

30. The Registration Statement fails to disclose the following concerning Houlihan Lokey's "*Discounted Cash Flow Analysis*": (1) the "Estimated NOL Tax Savings"; (2) the projected unlevered free cash flows of Marrone and Bioceres, respectively, and all underlying line items; (3) the terminal values of Marrone and Bioceres; (4) the individual inputs and assumptions underlying the multiples and discount rates used in the analysis; and (5) the net debt of each of Marrone and Bioceres, respectively.

31. The valuation methods, underlying assumptions, and key inputs used by Houlihan Lokey in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Houlihan Lokey's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

32. Without the information described above, the Company's shareholders are unable to fully understand Houlihan Lokey's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Houlihan Lokey and Roth

33. The Registration Statement omits material information concerning potential conflicts of interest involving Houlihan Lokey and Roth.

34. The Registration Statement provides that "Houlihan Lokey and certain of its affiliates have in the past provided investment banking, financial advisory and/or other financial or consulting services to MBI for which Houlihan Lokey and its affiliates have received, and may receive, compensation."

35. The Registration Statement, however, fails to disclose the timing and nature of the past services that Houlihan Lokey and/or its affiliates provided to Marrone, Bioceres, and/or their affiliates, including the amount of compensation Houlihan Lokey received or expect to receive for providing each service within the past two years.

36. The Registration Statement further fails to disclose the following concerning Roth: (1) the amount of compensation Roth has received or will receive in connection with its engagement by the Company; (2) the amount of Roth's compensation that is contingent upon consummation of the Proposed Transaction; and (3) whether Roth has performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received or expected to receive for providing such services.

37. The Registration Statement also fails to disclose the financial analyses performed by Roth. This must be disclosed as the Board consulted with Roth and relied upon Roth's counsel in connection with its recommendation that Company shareholders approve the Proposed Transaction.

38. Disclosure of a financial advisor's compensation and potential conflicts of interest

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

40. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

41. The Registration Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

42. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
## For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
## Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

11

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 20, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*